Filed 4/15/25  Zeta Global Corp. v. Socialcom CA2/7

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION SEVEN

| | |
|---|---|
| ZETA GLOBAL CORP., | B327582 |
| Plaintiff, Cross-Defendant, and Respondent, | (Los Angeles County Super. Ct. No. 19SMCV01066) |
| v. | |
| SOCIALCOM INC., | |
| Defendant, Cross-Complainant, and Appellant. | |

APPEALS from a judgment and a postjudgment order of the Superior Court of Los Angeles County, Elaine W. Mandel, Judge.  Reversed and remanded with directions.

Holmes, Athey, Cowan & Mermelstein and Andrew B. Holmes for Defendant, Cross-Complainant, and Appellant.

Du Wors Law Group and John Du Wors for Plaintiff, Cross-Defendant, and Respondent.

———————————————

Socialcom, Inc., doing business as AudienceX, appeals a net judgment for Zeta Global Corp. (Zeta) entered after a 10-day bench trial on the parties' claims against one another for breach of contract. AudienceX also appeals a postjudgment order granting Zeta attorney fees.

As to Zeta's successful breach of contract claims, AudienceX contends the trial court erred by ruling (1) AudienceX breached a binding letter of intent between the parties by failing to pay receivables[1] owed to Zeta's predecessor, Sizmek, Inc.; and (2) AudienceX did not prove the affirmative defense of novation with respect to Zeta's claim for breach of a separate partnership agreement. We agree with the first contention but not the latter.

As to AudienceX's cross-claims for breach of the same letter of intent, AudienceX contends the trial court's rulings were wrong in the following ways: (1) although the court found Zeta breached its obligation to grant shares of Zeta stock to AudienceX, the court erroneously determined AudienceX forfeited 75 percent of the stock; (2) the court erred by not awarding AudienceX prejudgment interest on the stock-related damages; and (3) although the court found Zeta breached its obligation to use best efforts to get former Sizmek clients to transfer to AudienceX, it erroneously found AudienceX failed to establish that the breach caused it harm. We conclude the trial court erred as to the first two claims of error, but not the third.

---

[1]    A "receivable" is a right to be paid an amount under a contract for the supply of goods or services. (Dorothy Livingston, *Freedom of Contract-A Justified Override?  The Business Contract Terms (Assignment of Receivables) Regulations 2018* (2019) 20 Bus. L. Internat. 63, 68.)

2

Finally, AudienceX correctly asserts that, because the trial court erred in determining AudienceX breached the letter of intent, we must reverse the court's grant of attorney fees to Zeta that was premised on this erroneous determination.

We reverse the judgment and direct the trial court to calculate prejudgment interest and enter a new judgment. We vacate the attorney fee award and remand for further proceedings on that issue as well.

## FACTUAL AND PROCEDURAL BACKGROUND

A.  *Sizmek's Bankruptcy*

AudienceX is a Santa Monica-based digital advertising firm. Sizmek formerly operated a demand-side software platform (DSP)—a tool that enables advertisers to automate the purchase and placement of online ads on behalf of their clients. In July 2018 AudienceX and Sizmek entered into a contract (the Sizmek Partner Agreement) in which AudienceX agreed to pay Sizmek a series of fees in exchange for use of Sizmek's platform. Prior to Sizmek's bankruptcy, AudienceX relied on Sizmek's platform to operate almost all of its business.

At the end of March 2019, Sizmek filed for bankruptcy. At that time, AudienceX owed Sizmek an unpaid receivable of $1,442,441 (the Sizmek Receivable) under the Sizmek Partner Agreement. In April 2019, Zeta entered into a contract to acquire Sizmek's DSP and its related receivables, including the Sizmek Receivable.

B.  *Zeta and AudienceX's Letter of Intent*

Zeta proposed an arrangement with AudienceX that would enable AudienceX to continue using Sizmek's (now Zeta's) DSP

3

and allow AudienceX to pick up the smaller Sizmek accounts, allowing Zeta to focus on the larger accounts and receive revenues from AudienceX's use of Zeta's platform.

On April 26, 2019 Zeta and AudienceX executed a "binding written letter of intent." Under the letter of intent, Zeta agreed to "sell to [AudienceX] certain assets of Sizmek, Inc. . . . relating to small to medium sized business accounts . . . following the closing of Zeta's acquisition of the Demand Side Platform business of Sizmek." To facilitate the transfer of those accounts, Zeta agreed to "use best efforts to assign [to AudienceX] the client contracts and accounts set forth on Exhibit A." Compiled by a former Sizmek employee at the direction of Zeta, Exhibit A listed 217 client accounts that collectively had spent over $38 million on Sizmek's platform in 2018. The letter of intent specified that the transfer "shall require (a) a handoff and transition from the Zeta/Sizmek customer success manager to the [AudienceX] counterpart, which may be in the form of email introduction explaining why [AudienceX] is the right firm to manage such client's campaigns and a reasonable attempt to schedule a joint phone call with such client to provide an introduction to [AudienceX's] account manager, and (b) the applicable client's acceptance of such assignment."

AudienceX agreed to pay Zeta a "quarterly earnout" of 25 percent of the net revenue from all transferred accounts. The letter of intent further specified that AudienceX "shall enter into a new Agreement with Zeta on the following terms," including using Zeta's DSP exclusively for the transferred accounts and for at least 60 percent of its other clients. The parties also agreed to enter into subsequent agreements, including a reseller agreement and a referral agreement.

4

Section 1(g) of the letter of intent stated Zeta would give AudienceX "a $300,000 credit" towards Zeta's DSP services "upon the following conditions:  i. Payment by [AudienceX] of its other outstanding receivables; and ii. Documentation that demonstrates the $300,000 credit is in respect of fees invoiced by Sizmek for media that was not executed by or delivered to [AudienceX]."

Section 1(f) provided AudienceX would receive $3.6 million in restricted shares of common stock of Zeta that would "be granted on the date the initial Transferred Accounts set forth on Exhibit A are assigned to [AudienceX] (excluding such accounts in which the client did not consent to such assignment)."  The stock would be issued at $13.04 per share, the same price set forth in Zeta's contract to acquire Sizmek's assets.[2]  The stock was "subject to forfeiture upon the material breach of the terms herein or of the Final Agreements . . . in accordance with the following:  i. Twenty-five percent (25%) of the Restricted Stock will 'vest' on the date of the closing of the Transaction and will not be subject to forfeiture at any time.  ii. An amount equal to one-thirty-sixth (1/36th) of the remaining Restricted Stock will 'vest' at the end of each month following the date of the closing of the Transaction and will no longer be subject to forfeiture upon such vesting.  iii. At any time there is a change of control of the DSP Business or any of its affiliates or upon an initial public offering [IPO] of the DSP Business or any of its affiliates, all of the unvested Restricted Stock will 'vest' and shall no longer be subject to forfeiture."

---

[2]     The parties agree that the number of shares to be issued was 276,074 shares (i.e., $3.6 million divided by $13.04 per share).

The "Final Agreements" clause in the letter of intent stated "the parties will complete the final agreements (the 'Final Agreements') relating to the Transaction and shall use reasonable best efforts to finalize and execute the Final Agreements as promptly as practicable following the date hereof; provided, that, in any event, the Final Agreements shall be finalized and executed no later than thirty (30) days from the date hereof. Even though the business terms set forth herein are binding, the Final Agreements will include the terms in this letter as well as other representations, covenants, conditions, indemnities and terms that are customary for transactions of this kind. Notwithstanding the foregoing, in the event no Final Agreements are executed, the agreements set forth herein are binding and operative and Zeta and [AudienceX] agree to operate under such terms and subject to such conditions."

The letter of intent included a choice of law provision specifying Delaware law would apply.

C.      *Zeta and AudienceX's Relationship Disintegrates*

Three days after the parties executed the letter of intent, on April 29, 2019, the bankruptcy court approved Zeta's acquisition of Sizmek's assets. The same day, AudienceX's chief executive officer (CEO) emailed Zeta's general counsel, emphasizing the importance of reactivating Sizmek's customers. He indicated AudienceX had been through similar account transfers with Sizmek and with Sizmek's predecessor, RocketFuel, and had developed a "highly refined process" to get clients to transfer to AudienceX. He proposed starting with email outreach to former Sizmek clients, followed by a call with sales and customer service teams from both AudienceX and Sizmek.

6

A week and a half later, Zeta's general counsel emailed AudienceX that Zeta was working on a press release about the transfer of accounts to AudienceX. He also wrote, "We are focusing on getting the [accounts receivable] caught up now and you guys are one of the larger outstanding amounts. I know there is a $300k credit pending verification that media was not delivered, but in the meantime we'd like you to pay the remainder now." AudienceX responded that it was finalizing an audit and "may have a serious issue pertaining to over-billing," but expressed a desire to resolve the matter quickly without litigation. Zeta's general counsel replied and reiterated that AudienceX's agreement to pay the Sizmek Receivable, subject to the $300,000 credit, was "fundamental to our agreement and your failure to pay is a material breach." AudienceX's CEO responded that AudienceX was working to release funds and expected to pay by the following Tuesday.

During the same period, AudienceX emailed the transferred accounts with a pitch for working together, copying a Sizmek employee who had joined Zeta. Zeta employees sent internal emails expressing confusion about the account transfer process and suggesting they planned to compete with AudienceX for the accounts. For example, after a Zeta employee informed an AudienceX employee that an account preferred to stay under Zeta's management, another Zeta employee commented, "It sounds like survival of the fittest. And if so – our team is strong. I'll go head-to-head against an [AudienceX] rep any day of the week!"

In mid-May 2019 AudienceX informed Zeta's leadership that Zeta's sales teams were contradicting AudienceX's email outreach to the transferred accounts and that Zeta had failed to

provide necessary historical information for the accounts. AudienceX expressed concern that Zeta had not made introductions or conducted joint phone calls with clients, as required by the letter of intent. Zeta's general counsel responded that Zeta was instructing its team to assist with the account transitions but emphasized that AudienceX had yet to make its promised payment of the Sizmek Receivable.

Over the next few weeks, AudienceX continued to request that Zeta send correspondence to the transferred accounts and pointed to additional instances of Zeta employees interfering with the account transfer process. Simultaneously, Zeta repeatedly demanded AudienceX pay the Sizmek Receivable, as well as new fees AudienceX had incurred for its use of Zeta's DSP after Sizmek's bankruptcy. At one point, Zeta's general counsel calculated, "You should pay the amount past due minus the $300,000 credit. $1,195,971- $300,000 = $895,971. Then you should pay the April invoice of $246,170 when that is due at the end of this month." After following up multiple times without a response, Zeta's general counsel wrote, "This email is Zeta's final notice of material breach of the Letter of Intent. . . . AudienceX has failed after receipt of multiple notices and requests to pay all outstanding amounts. . . . Subject to the $300,000 credit (for which you are required to provide documentary evidence of underdelivery), in order to cure your breach of the [letter of intent] you must begin to pay the $1,142,140.55 immediately." He stated Zeta was terminating the letter of intent.

Through early June 2019 the parties continued to demand the other perform under the letter of intent. However, AudienceX did not pay Zeta, and Zeta never sent any correspondence to the transferred accounts.

8

Zeta went public two years later on June 9, 2021.  At the close of trading that day, its shares were valued at $8.89 per share.

D.    *Procedural History*

1.    *Zeta's complaint and AudienceX's cross-complaint*

Zeta sued AudienceX in June 2019.  As pertinent here, the operative second amended complaint alleged two causes of action for breach of contract by AudienceX:  (1) breach of the letter of intent between AudienceX and Zeta by failing to pay the Sizmek Receivable (the first cause of action), and (2) breach of the Sizmek Partner Agreement (with Zeta as Sizmek's successor in interest), also by failing to pay the Sizmek Receivable (the second cause of action).  For the first cause of action, Zeta sought attorney fees under the broad fee-shifting provision in the letter of intent.  For the second cause of action, Zeta sought attorney fees under the fee-shifting provision in the Sizmek Partner Agreement, but that agreement provided for Sizmek's recovery of attorney fees only in connection with claims relating to the improper use of Sizmek's confidential information.

AudienceX pleaded an affirmative defense of novation as to the Sizmek Partner Agreement.  Based on the provision in the letter of intent regarding a $300,000 credit from Zeta if AudienceX paid the Sizmek Receivable, AudienceX contended Zeta agreed to accept $900,000 to fully satisfy all amounts owed to Sizmek as part of the Sizmek Receivable.

In September 2019 AudienceX filed a cross-complaint against Zeta and Zeta's CEO David Steinberg.[3]  As pertinent here, the operative first amended cross-complaint alleged that Zeta breached the letter of intent by (a) failing to use best efforts to transfer customer accounts to AudienceX and (b) failing to transfer Zeta stock to AudienceX.

    2.    *Bench trial*

The court conducted a 10-day bench trial in June 2022. Zeta sought $1.2 million for the unpaid Sizmek Receivable.  Zeta also sought $162,456 for AudienceX's unpaid fees for use of Zeta's DSP after Sizmek's bankruptcy, but the court determined that claim was outside the scope of the trial because the fees came due only after Zeta filed its complaint and Zeta had not amended its complaint to include those receivables.

With respect to AudienceX's cross-claim that Zeta breached the letter of intent by failing to transfer Zeta stock, AudienceX's damages expert opined that the value of the stock Zeta owed to AudienceX was $2.25 million.  The expert calculated that figure using the $8.89 per share price at which the shares closed the first day of trading (i.e., $8.89 x 276,074 shares).[4]  Zeta's expert did not opine on the value of the Zeta stock that AudienceX

---

[3]    Steinberg apparently was dismissed from the case before trial, but the record does not show when.  In addition, several causes of action alleged in both the complaint and the cross-complaint apparently were also disposed of before trial, but the record does not reveal how.

[4]    It appears AudienceX's damages expert made a typographical or math error in opining the estimated value of the stock was $2,**2**54,298 (rounded to $2.25 million).  In fact, 276,074 shares at $8.89 per share is $2,**4**54,298.

claimed it was owed under the letter of intent, and Zeta presented no evidence contradicting AudienceX's valuation of the stock.

With respect to AudienceX's contention that Zeta breached the letter of intent by failing to use best efforts to assign Sizmek clients to Zeta, AudienceX submitted evidence that it had inherited a client list from Sizmek's predecessor, RocketFuel. To facilitate client transfers to AudienceX, RocketFuel had engaged in a thorough process of providing to AudienceX the history of each account, then making introductions for each of these clients, including an email and a follow-up telephone call to the client. Ultimately 63 percent of the RocketFuel clients transferred their business to AudienceX. By contrast, Zeta had not engaged in these types of outreach efforts, and few, if any, Sizmek clients transferred to AudienceX.

Zeta's general counsel testified that after Sizmek declared bankruptcy and missed payroll, the majority of its sales managers—approximately 270 to 280 out of 300—left the company, leaving only more junior employees. None of the remaining sales managers had relationships with any clients on the transfer list. Moreover, after Sizmek's bankruptcy filing, its platform was down for a week and continued to suffer intermittent outages in the weeks that followed, disrupting clients' ability to use the platform. By contrast, when AudienceX inherited RocketFuel's client list, RocketFuel was not in bankruptcy, its platform had no extended outages, and the relevant sales managers were still with the company.

AudienceX's damages expert initially opined that AudienceX had suffered lost net income of over $136 million from Zeta's breach of its obligation to make "best efforts" to ensure

11

customers transferred over to AudienceX.  By the time of trial, the expert reduced his damages estimate to $41 million. In projecting these expected revenues from the Sizmek accounts, the expert relied on the 63 percent transfer rate of RocketFuel accounts to AudienceX.

Zeta's damages expert opined AudienceX had overstated the number of clients who would transfer to AudienceX, vastly overstated expected revenues, and understated the attrition of clients over time and the costs of sales.  The expert indicated the data showed the number of clients using Sizmek's services had declined every year, AudienceX could not expect the same results it had with RocketFuel accounts, the actual revenues had been very volatile, and AudienceX's expected profit margin was not realistic.  Zeta's damages expert opined AudienceX would suffer a net loss even assuming Zeta had not breached its obligations to assist in getting customers to transfer to AudienceX.

3. *Statement of decision, judgment, and cross-motions for attorney fees*

The trial court issued a tentative decision in August 2022, followed by amendments to the decision based on objections filed by AudienceX.  The court found all witnesses credible, though it noted some of their testimony was contradictory.  The court found the letter of intent was binding and enforceable, notwithstanding its reference to future Final Agreements.  It also rejected Zeta's argument that the letter of intent was terminable at will.

Regarding Zeta's claims, the court concluded Zeta prevailed on its second cause of action for breach of the Sizmek Partner Agreement, based on AudienceX's failure to pay Zeta the $1.2 million Sizmek Receivable.  The court determined, "As an asset purchased through bankruptcy, this payment obligation exists

12

independently of any obligations [that] were created or extinguished via the [letter of intent]. Neither party disputed that Zeta obtained the right to those payments when it purchased Sizmek's assets." The court rejected AudienceX's affirmative defense of novation based on the agreement regarding the $300,000 credit, finding insufficient evidence that the parties formed a new contract reducing the amount AudienceX owed.

The court also ruled Zeta prevailed on its cause of action for breach of the letter of intent. The court concluded that "payment of the [Sizmek] [R]eceivable was an obligation AudienceX had under . . . section 1(g)(i) of the letter of intent. AudienceX's failure to pay those accounts constituted a breach of the [letter of intent]." The court found that because AudienceX never paid the Sizmek Receivable, it failed to fulfill the "condition precedent" identified in the letter of intent and was not entitled to a $300,000 credit.

The court awarded Zeta $1.2 million plus compounded monthly interest of 1.5 percent (as set forth in the Sizmek Partner Agreement), for a total of $2,144,652 as of March 29, 2019.

Regarding AudienceX's claim in its cross-complaint that Zeta breached its obligation under the letter of intent to transfer Zeta stock to AudienceX, the court agreed in the tentative decision that 25 percent of the Zeta stock vested upon the signing of the letter of intent and was immune to forfeiture. However, it found the remaining 75 percent of the stock was forfeited for two reasons: (1) AudienceX breached the letter of intent by failing to pay the Sizmek Receivable, and (2) "since none of the clients consented to assignment of their accounts to AudienceX, under Sec. 1f, none of the non-vested stock transfers to AudienceX."

13

The court thus awarded AudienceX $562,000, which was 25 percent of $2.25 million, the total value of the stock. The court later "sustained in part" AudienceX's objection that the tentative decision was ambiguous as to the basis for awarding AudienceX 25 rather than 100 percent of the stock, and the court "clarifie[d] as follows": "[The] damages awarded represent the 25% of the stock that vested, with the remaining 75% forfeited due to AudienceX's breach of the [letter of intent] §l(g). . . . [T]he court will not award damages based on the 75% of stock subject to forfeiture."

The court awarded AudienceX no prejudgment interest, concluding its damages "were not liquidated or easily calculable from the evidence, as required under Delaware law."

The court also determined Zeta breached the letter of intent by failing to meet its "best efforts" obligations. The court highlighted several failures by Zeta, including its lack of assistance and delays in email outreach to potential transferring clients. Regardless, the court determined it was "entirely speculative" how many of the 217 accounts would have transferred to AudienceX had Zeta, not AudienceX, sent the transfer correspondence. The court rejected comparisons to the 63 percent transfer rate from RocketFuel based on what the court found to be significant differences in the situation. Unlike the circumstances at Sizmek, RocketFuel was not in bankruptcy at the time of the attempts to transfer clients, there was no extended outage of its platform, and there was no departure of around 80 percent of the sales managers. The court noted the relevant client accounts "had no relationship with either Zeta or AudienceX; their relationships were with Sizmek and Sizmek's departed sales staff. It is noteworthy that many of the 217

14

accounts were self-directed, working on their own, not with an intermediary like AudienceX, to place ads." Accordingly, despite finding Zeta was in breach of its obligation to use best efforts, the court found AudienceX had failed to show that this breach caused any damages, and thus it found in favor of Zeta on this claim for breach of the letter of intent.

The court entered final judgment in February 2023. The judgment provided that Zeta prevailed on both breach of contract claims against AudienceX for failure to pay the Sizmek Receivable, resulting in damages of $2,144,652. The court also found that AudienceX had partially prevailed on its cross-claim against Zeta for breach of the letter of intent, resulting in damages of $562,000. After offsetting these amounts, the court entered a net judgment of $1,582,652 to Zeta. AudienceX timely appealed; Zeta did not appeal.

Both Zeta and AudienceX filed motions for attorney fees under Civil Code section 1717, each arguing that it was the "prevailing party." The court denied AudienceX's motion and granted Zeta's motion in part, awarding Zeta $731,817.10 in fees. The court determined Zeta was the prevailing party, finding Zeta "came closer to achieving [its] litigation goals." AudienceX timely appealed the order on attorney fees. We consolidated the two appeals.

**DISCUSSION**

A.    *Standard of Review*

When the trial court has prepared a statement of decision, we "independently review the trial court's rulings on questions of law." (*Brasher's Cascade Auto Auction v. Valley Auto Sales & Leasing* (2004) 119 Cal.App.4th 1038, 1048.) We review a trial

15

court's findings of fact set forth in a statement of decision for substantial evidence.  (*Symons Emergency Specialties v. City of Riverside* (2024) 99 Cal.App.5th 583, 596 (*Symons*).)  "Generally, 'our review begins and ends with the determination as to whether, on the entire record, there is substantial evidence, contradicted or uncontradicted, which will support the trial court's factual determinations.' " (*Ibid*.)  " 'The substantial evidence standard of review takes on a unique formulation where . . . "the trier of fact has expressly or implicitly concluded that the party with the burden of proof did not carry the burden and that party appeals." ' [Citation.]  Under these circumstances, ' " ' "the question for a reviewing court becomes whether the evidence compels a finding in favor of the appellant as a matter of law.  [Citations.]  Specifically, the question becomes whether the appellant's evidence was (1) 'uncontradicted and unimpeached' and (2) 'of such a character and weight as to leave no room for a judicial determination that it was insufficient to support a finding.' " ' " ' " (*Id.* at p. 597.)

If a party brings omissions or ambiguities in a tentative decision to the attention of the trial court under Code of Civil Procedure section 634, an appellate court will not imply findings favorable to the judgment on that issue as it otherwise would. (*In re Marriage of Arceneaux* (1990) 51 Cal.3d 1130, 1133; *Kaushansky v. Stonecroft Attorneys, APC* (2025) 109 Cal.App.5th 788.)

B.    *Delaware Law Applies*

The letter of intent provides that it "shall be governed by and construed in accordance with" Delaware law.  "California applies the principles set forth in section 187 of the Restatement

16

Second of Conflict of Laws (section 187) in determining the enforceability of contractual choice of law provisions. [Citation.] Under section 187, the parties' choice of law generally governs unless (1) it conflicts with a state's fundamental public policy, and (2) that state has a materially greater interest in the determination of the issue than the contractually chosen state." (*Pitzer College v. Indian Harbor Ins. Co.* (2019) 8 Cal.5th 93, 100.) Except on the issue of attorney fees, neither party challenges the assumption that Delaware law applies to the issues here. Moreover, there was a reasonable basis for the selection of Delaware law because Zeta was incorporated in Delaware. (See *ibid.*) We further conclude Delaware law does not conflict with California's fundamental public policy on any of the issues at hand. (See *ibid.*) Thus, we apply Delaware law.

C.     *Zeta's Breach of Contract Claims Against AudienceX*
1.     *Zeta's claim for breach of the Sizmek Partner Agreement (its second cause of action) and AudienceX's novation defense*

The trial court determined that AudienceX breached the Sizmek Partner Agreement by failing to pay the Sizmek Receivable. AudienceX does not argue this ruling was erroneous. Rather, it suggests it should have been ordered to pay only $900,000, not $1.2 million, based on its affirmative defense that the parties "had entered into a novation, pursuant to which AudienceX agreed to pay Zeta, and Zeta agreed to accept, a total of $900,000 in full satisfaction" of AudienceX's obligation under the Sizmek Partner Agreement to pay the Sizmek Receivable.

AudienceX bore the burden to prove the affirmative defense of novation. (See *Berg v. Liberty Federal Savings and Loan Assn.*

17

(Del. 1981) 428 A.2d 347, 349 ["A novation will not be presumed but must be proved, with the burden of proof thereon resting on the proponent."].) The trial court found that AudienceX failed to prove a new agreement existed. Accordingly, we may reverse the trial court's ruling on this affirmative defense only if the evidence compelled a ruling in favor of AudienceX as a matter of law. (*Symons*, *supra*, 99 Cal.App.5th at p. 596.) This we cannot find.

"A novation extinguishes a prior contract and replaces it with a new agreement. It requires four elements: '(1) a valid pre-existing obligation; (2) a valid new contract; (3) extinction of the old contract; and (4) the consent of all parties to the novation transaction.'" (*Aveta Inc. v. Bengoa* (Del.Ch. 2009) 986 A.2d 1166, 1186.)

AudienceX contends the "evidence at trial reflects the fact that the parties negotiated a reduced payment amount in satisfaction of the Sizmek [R]eceivable, which they intended to fully extinguish the liability." Specifically, AudienceX cites testimony by AudienceX's original CEO that he believed Zeta agreed to reduce the Sizmek Receivable by $300,000. It also relies on testimony by AudienceX's successor CEO that the parties "had agreed that the receivable was $900,000 and that there was a $300,000 reduction applied,"[5] and testimony by Steinberg that Zeta "agreed to discount" the Sizmek Receivable

---

[5] Although AudienceX challenges the court's determination that "the outstanding Sizmek [R]eceivable was *precisely* $1,200,000, a suspiciously round number," and notes none of the Sizmek invoices was admitted into evidence, AudienceX nevertheless argues the damages award against it should be $900,000, rather than $1.2 million, thus accepting $1.2 million as the amount against which the $300,000 should have applied.

18

"to help [AudienceX] better make a payment plan." But even if individuals at AudienceX or Zeta may have understood the $300,000 to be a reduction in debt as opposed to a conditional credit, the subjective belief of a party is insufficient to establish novation. (See *Aveta Inc. v. Bengoa*, *supra*, 986 A.2d at p. 1186 ["To determine whether a contract was formed, the parties' 'overt manifestation of assent—not subjective intent—controls.' "].)

Here, the letter of intent provides for a $300,000 "credit . . . upon the following conditions," including AudienceX paying the Sizmek Receivable and providing certain documentation. Moreover, other evidence indicates the parties agreed that Zeta would credit AudienceX $300,000 if AudienceX paid the remaining balance of the Sizmek Receivable. For instance, in email exchanges between AudienceX and Zeta in May 2019, Zeta representatives referred to the $300,000 as a "credit" dependent upon AudienceX's prompt payment of the Sizmek Receivable. The evidence did not compel the conclusion as a matter of law that a novation was consummated, and thus we affirm the court's ruling to the contrary.

> 2. *Zeta's claim for breach of the letter of intent (Zeta's first cause of action)*
>> a. *The court erroneously found AudienceX in breach of the letter of intent by failing to pay the Sizmek Receivable*

The trial court concluded that AudienceX had an obligation to pay the Sizmek Receivable under section 1(g)(i) of the letter of intent, and its failure to do so was a material breach.[6] However,

---

[6] Zeta sought the same damages for its two causes of action for breach of contract. Having affirmed the trial court's

19

AudienceX contends that it did not promise to pay the Sizmek Receivable in the letter of intent; rather, its payment of the existing Sizmek Receivable was a condition precedent to receiving a $300,000 credit. We agree with AudienceX's interpretation.

In interpreting the letter of intent, we apply the canons of contract interpretation under Delaware law. "When determining the scope of a contractual obligation and measuring the parties' conduct against that obligation to determine breach, 'the role of a court is to effectuate the parties' intent.' . . . 'Unless there is ambiguity, Delaware courts interpret contract terms according to their plain, ordinary meaning.'" (*In re Anthem-Cigna Merger Litig.* (Del.Ch., Aug. 31, 2020, No. CV 2017-0114-JTL) 2020 WL 5106556, at *90.)[7] "Disagreement among the parties as to the meaning of the contract does not alone mean that the contract is ambiguous. Rather, a contract is ambiguous when 'the provisions in controversy are reasonably or fairly susceptible of different

---

determination as to the second cause of action that AudienceX breached the Sizmek Partner Agreement by failing to pay the $1.2 million Sizmek Receivable, we reach the question of whether AudienceX breached the letter of intent (the first cause of action) because, as discussed below, attorney fees are only recoverable as to Zeta's first cause of action.

[7] Unpublished cases from the Court of Chancery of Delaware and Delaware Superior Court may be cited. (See Del. Ch. Ct. R. § III(e); Del. Rules of Supreme Ct., rules 14(b)(vi)(4); see also *Pacific Shore Funding v. Lozo* (2006) 138 Cal.App.4th 1342, 1352, fn. 6 [unpublished cases that are not California state cases are citable].) "An unreported [Delaware court] decision, while entitled to great deference, is not necessarily *stare decis*." (*Aprahamian v. HBO & Co.* (Del. Ch. 1987) 531 A.2d 1204.)

20

interpretations.' " (*Active Day OH, Inc. v. Wehr* (Del.Super.Ct., June 27, 2024, No. N22C-08-064 SKR CCLD) 2024 WL 3201167, at \*3; accord, *Ewell v. Those Certain Underwriters of Lloyd's, London* (Del.Super.Ct., Aug. 27, 2010, No. CIV.A.S09C-07-031 RFS) 2010 WL 3447570, at \*4.)

A condition precedent is "an act or event, other than a lapse of time, that must exist or occur before a duty to perform something promised arises." (*Thomas v. Headlands Tech Principal Holdings, L.P.* (Del.Super.Ct., Sept. 22, 2020, No. N19C-11-041 EMD CCLD) 2020 WL 5946962, at \*5.) "Under principles of contract law, there is a distinction between promises and conditions. Promises give rise to a duty to perform, and conditions are events that must occur before a party is obligated to perform. While the non-performance of a promise or covenant can result in a breach of contract, the non-occurrence of a condition is not considered a breach unless the party promised that the condition would occur." (*TravelCenters of America LLC v. Brog* (Del.Ch., Dec. 5, 2008, No. CIV.A. 3751-CC) 2008 WL 5272861, at \*3, fns. omitted; see *Cantor Fitzgerald, L.P. v. Ainslie* (Del. 2024) 312 A.3d 674, 686 [" 'nonperformance of a condition precedent is not a breach of contract since the purpose of the condition is merely to qualify the duty to perform immediately' "].)

"The existence of a condition precedent is a question of contract interpretation, and therefore, of law." (*Aveanna Healthcare, LLC v. Epic/Freedom, LLC* (Del.Super.Ct., July 29, 2021, No. N20C-08-055 AML CCLD) 2021 WL 3235739, at \*25.) Whether a term is a promise or a condition precedent to performance by the other party depends on the parties' intent, which is divined from the terms of the agreement. (*B&C*

21

*Holdings, Inc. v. Temperatsure Holdings, LLC* (Del.Super.Ct., Apr. 22, 2020, No. N19C-02-105 AML CCLD) 2020 WL 1972855, at *9, fn. omitted.) "Although no particular words are necessary for the existence of a condition, such terms as 'if,' 'provided that,' 'on condition that,' or some other phrase that conditions performance usually connote an intent for a condition rather than a promise." (*SLMSoft.Com, Inc. v. Cross Country Bank* (Del.Super.Ct., Apr. 2, 2003, No. CIV.A.00C09163JRJ) 2003 WL 1769770, at *12.)

Section 1(g) of the letter of intent states: "<u>Credit</u>. Zeta will give [AudienceX] a $300,000 credit in respect of DSP Services *upon the following conditions*: i. Payment by [AudienceX] of its other outstanding receivables; and ii. Documentation that demonstrates the $300,000 credit is in respect of fees invoiced by Sizmek for media that was not executed by or delivered to [AudienceX]." (Italics added). The language "upon the following conditions" plainly establishes that AudienceX's payment of the Sizmek Receivable was a condition precedent to Zeta extending the $300,000 credit.

Moreover, AudienceX did not promise in the letter of intent to perform the condition of payment of the Sizmek Receivable. Rather, AudienceX's only substantive obligations under the letter of intent were to pay Zeta a 25 percent "quarterly earnout" on revenues from the transferred accounts and to use Zeta's platform exclusively for the transferred accounts and for at least 60 percent of its media execution for its other clients. Thus, AudienceX's failure to pay the Sizmek Receivable was not a breach of the letter of intent; it was a failure to satisfy a condition precedent. (See *Cantor Fitzgerald, L.P. v. Ainslie*, *supra*, 312 A.3d at p. 686; *Summit Investors II, L.P. v. Sechrist*

*Industries, Inc.* (Del.Ch., Sept. 20, 2002, No. CIV.A. 19400) 2002 WL 31260989, at \*7 [failure to satisfy a condition precedent does not give rise to damages].)

Zeta argues AudienceX's obligation to pay the Sizmek Receivable under the Sizmek Partner Agreement was "incorporated by reference" into the letter of intent. However, an agreement must explicitly manifest the intent to incorporate another by reference. (See *Town of Cheswold v. Central Delaware Business Park* (Del. 2018) 188 A.3d 810, 819 [" '[T]o incorporate one document into another, an explicit manifestation of intent is required.' "].) The letter of intent mentions the Sizmek Receivable only in the context of a condition precedent to receiving the $300,000 credit; it does not manifest an intent to incorporate the Sizmek Partner Agreement or AudienceX's obligations under it. (See *ibid.* [" '[A] mere reference in one agreement to another agreement, without more, does not incorporate the latter agreement into the former by reference.' "].)

The trial court thus erred in finding AudienceX breached the letter of intent by failing to pay the Sizmek Receivable.

> b. *The court found no other breaches of the letter of intent by AudienceX*

Zeta suggests the trial court found AudienceX breached the letter of intent in several other ways besides failing to pay the Sizmek Receivable. Its contentions are either contradicted or unsupported by the record. First, Zeta contends the court found AudienceX breached the letter of intent by failing to pay new fees for platform use. However, the trial court expressly rejected that claim, concluding Zeta never amended its complaint to add a claim for those receivables.

Zeta next contends the trial court found AudienceX breached the letter of intent by failing to enter into Final Agreements anticipated in the letter of intent. But the court merely found that although the Final Agreements "were never drafted or executed," the letter of intent "nonetheless states it is a 'binding' written [letter of intent]," which meant that "regardless of whether additional documents are finalized, the [letter of intent] is enforceable." The court did not find AudienceX in breach for not moving forward with the Final Agreements.

In sum, the trial court found AudienceX breached the letter of intent only in one respect—by failing to pay the Sizmek Receivable—and we reverse that ruling. Zeta properly prevailed only on its breach of contract claim under the Sizmek Partner Agreement.

D.   *AudienceX's Cross-claims Against Zeta for Breach of the Letter of Intent*

1.   *AudienceX is entitled to 100 percent recovery on its claim for Zeta's breach of the obligation to grant stock*

After concluding Zeta breached its obligation under the letter of intent to transfer Zeta stock to AudienceX, the court awarded AudienceX $562,000, which it stated was 25 percent of the $2.25 million that AudienceX's expert estimated as the value of all the stock. The court determined 25 percent of the stock vested upon the signing of the letter of intent. However, relying on the provision in the letter of intent that the stock "will be subject to forfeiture upon the material breach of the terms herein," the court found that the remaining 75 percent was forfeited because AudienceX materially breached the letter of intent by failing to pay the Sizmek Receivable. AudienceX

24

contends that because it did not materially breach the letter of intent by failing to pay the Sizmek Receivable, the court's basis for finding AudienceX forfeited 75 percent of the stock is unsupported.  We agree.

Zeta suggests that even if not forfeited, the remaining 75 percent of stock never *vested* because Final Agreements were never executed and there was no "closing," pointing to the language in the letter of intent that vesting of the remaining 75 percent would occur "on the date of the closing of the Transaction."  However, the trial court explicitly rejected that identical argument by Zeta in concluding AudienceX was entitled to 25 percent of the stock under the letter of intent, which similarly provides "25%[] of the Restricted Stock will 'vest' on the date of the *closing of the Transaction*."  (Italics added.)  The court concluded that, even without a closing or Final Agreements, the provisions regarding the grant of Zeta's stock were enforceable and 25 percent of the stock had vested.  Having failed to appeal, Zeta cannot challenge the court's ruling on this point, the logic of which is equally applicable to the question whether the remaining 75 percent of stock vested.[8]

Accordingly, we agree with AudienceX that the court erred in determining that its recovery for the promised Zeta stock was limited to 25 percent.  Rather, because Zeta did not prove a material breach of the letter of intent by AudienceX that would justify forfeiture of the stock, AudienceX is entitled to recover as

---

[8]     Moreover, under the letter of intent, upon an IPO of the business, "all of the unvested Restricted Stock will 'vest' and shall no longer be subject to forfeiture."  Zeta's IPO took place in June 2021.

damages the value of 100 percent of the stock, which AudienceX argued, and the court accepted, was $2.25 million.

2. *AudienceX is entitled to prejudgment interest on its damages award for the Zeta stock*

The trial court declined to award AudienceX prejudgment interest on the damages for Zeta's failure to grant stock because "any damages it suffered as a result of Zeta's breach were not liquidated or easily calculable from the evidence, as required by Delaware law." AudienceX argues the trial court erred in denying its claim for prejudgment interest, which, according to AudienceX, began accruing at 8 percent on April 26, 2019—the date the parties executed the letter of intent. Zeta responds that under Delaware law, prejudgment interest is only permitted when the amount in controversy is fully liquidated. Because Zeta was a privately held company and the value of its stock was unliquidated as of the date the letter of intent was executed, Zeta contends that AudienceX is not entitled to such interest.

AudienceX is entitled to prejudgment interest. However, the interest should be calculated from the date of Zeta's IPO, not the date of the letter of intent.

"[T]he measure of damages [is] a question of law." (*Shah v. Skillz Inc.* (2024) 101 Cal.App.5th 285, 312, 320.) The determination "whether [a] plaintiff can recover interest, and, if so, the rate, upon damages awarded [it] for the period between the breach of contract and the rendition of judgment," is governed by the law chosen by the parties to govern their contractual rights and duties. (*Airs Aromatics, LLC v. CBL Data Recovery Technologies, Inc.* (2020) 50 Cal.App.5th 1009, 1014; see Rest.2d Conf. of Laws § 207, com. e, p. 675.) Thus, Delaware law applies

26

to the question of whether AudienceX was entitled to prejudgment interest.

"In a Delaware action based on breach of contract or debt, prejudgment interest is awarded as a matter of right." (*Delta Eta Corp. v. University of Delaware* (Del. 2010) 2 A.3d 73.) The interest rate for damages is governed by 6 Delaware Code section 2301, which sets the legal interest rate at 5 percent over the Federal Reserve discount rate unless the contract specifies a different rate. (*American General Corp. v. Continental Airlines Corp.* (Del.Ch. 1992) 622 A.2d 1, 8 (*American General*); 6 Del. C. § 2301, subd. (a).)

When the obligation to make payment arises from a contract, the court should look to the contract to determine when interest begins to accrue. (*Brandywine Smyrna, Inc. v. Millenium Builders, LLC* (Del. 2011) 34 A.3d 482, 485.) Prejudgment interest generally accrues from the date of the breach. (*American General*, *supra*, 622 A.2d at p. 8.) However, if the facts of a particular case or the contract dictate otherwise, a court may award prejudgment interest from a different date. (*Ibid.*; cf. *Shah v. Skillz Inc.*, *supra*, 101 Cal.App.5th at p. 308 ["longstanding Delaware precedents establish that damages for lost stock options in a breach of contract action may be measured as of a date other than the date of breach based on equitable considerations"].)

Here, the interest should be calculated from the date of Zeta's IPO, the date the value of the stock became fixed and readily ascertainable from the established market price of $8.89 per share. (See *Brown v. Matterport, Inc.* (Del.Ch., May 28, 2024, No. 2021-0595-LWW) 2024 WL 2745822, at *20 [when employee was granted stock options for a company that later went public,

27

prejudgment interest properly awarded from "the day [the plaintiff] could reasonably have started trading"]; see also *American General, supra*, 622 A.2d at p. 13 [although breach of obligation to provide stock options occurred on date of merger, prejudgment interest should be measured from the date the merger was approved by stockholders because the "option was not 'issued or payable' " until then].) The court erred in failing to award AudienceX prejudgment interest. On remand, it should calculate the interest beginning June 9, 2021, the date of Zeta's IPO, on AudienceX's damages totaling $2.25 million.

> 3. *AudienceX failed to prove as a matter of law that Zeta's breach of its obligation to use best efforts caused damage to AudienceX*

Although the trial court determined Zeta breached the letter of intent by failing to make best efforts to get Sizmek clients to transfer to AudienceX, the court ruled AudienceX failed to meet its burden of establishing that Zeta's breach caused AudienceX damages. The court concluded it was "entirely speculative" that any of the accounts would have transferred to AudienceX had Zeta met its obligations. AudienceX contends the trial court erred in so concluding. Because AudienceX had the burden of proof, we ask whether the evidence compels a finding on this point in favor of AudienceX as a matter of law. (See *Symons, supra*, 99 Cal.App.5th at p. 597.) The evidence does not compel this result.

"Under Delaware law, the elements of a breach of contract claim are (i) a contractual obligation, (ii) a breach of that obligation by the contractual party; and (iii) causally related harm to the counterparty." (*JER Hudson GP XXI LLC v. DLE Investors, LP* (Del. Ch. 2022) 275 A.3d 755, 800.) Success on a

28

breach of contract claim requires the plaintiff to "demonstrate with reasonable certainty that defendant's breach caused the loss." (*Active Day OH, Inc. v. Wehr*, *supra*, 2024 WL 3201167, at *4.) "[P]laintiffs may satisfy this burden merely by taking the causation of damages out of the area of speculation, and it is not necessary to show with absolute certainty that defendant's action caused plaintiffs' harm." (*LaPoint v. AmerisourceBergen Corp.* (Del. Ch. May 1, 2007, No. CIV.A. 327-CC) 2007 WL 1309398, at *7, fn. omitted, aff'd, 956 A.2d 642 (Del. 2008); accord, *Siga Technologies, Inc. v. PharmAthene, Inc.* (Del. 2015) 132 A.3d 1108, 1111 ["[W]hen a contract is breached, expectation damages can be established as long as the plaintiff can prove the *fact* of damages with reasonable certainty. The *amount* of damages can be an estimate."].)

The evidence does not compel a finding as a matter of law that it is reasonably certain that Zeta's failure to use best efforts caused AudienceX to miss out on Sizmek clients, leading to lost profits. There was ample evidence at trial to support the court's determination to the contrary. Specifically, the court found that after Sizmek declared bankruptcy and missed payroll, most of its sales managers left the company, leaving none who had relationships with the transferred accounts. Thus, there was no one with a connection with the Sizmek clients to facilitate introductions with AudienceX.

Further, the court noted Sizmek's platform was entirely down for a week around the bankruptcy filing and continued to have intermittent outages. The court concluded from the evidence that outreach efforts from unfamiliar employees at Zeta, a company with whom the Sizmek clients were not acquainted, regarding a dormant platform were not likely to be effective. The

29

court rejected AudienceX's reliance on the RocketFuel transfer, where AudienceX inherited 63 percent of the clients, as a basis for comparison. The court noted RocketFuel was not in bankruptcy, its platform had no extended outages, it had more active customers, and the relevant sales managers remained with the company.

AudienceX plucks particular pieces of evidence from the record to support its contrary assertion that some accounts would have transferred had Zeta used its best efforts. But AudienceX has failed to establish this evidence was " ' " ' "(1) 'uncontradicted and unimpeached' and (2) 'of such a character and weight as to leave no room for a judicial determination that it was insufficient to support a finding.' " ' " ' " (*Symons*, *supra*, 99 Cal.App.5th at p. 597.) Accordingly, AudienceX has failed to establish that it should have prevailed as a matter of law on its claim for breach of Zeta's obligation to use best efforts to secure client transfers.

E.      *Attorney Fee Award*

The trial court concluded Zeta was the prevailing party and awarded it attorney fees under the fee-shifting provision in the letter of intent, while denying AudienceX's request for fees. We reverse that ruling.

Civil Code section 1717, subdivision (a), provides that when a contract contains a fee-shifting provision, the "party prevailing on the contract . . . shall be entitled to reasonable attorney's fees in addition to other costs."[9] The "party prevailing on the contract

---

[9]      Although the parties assert Delaware law applies to other issues in the case, both parties' briefs cite exclusively California law on the issue of attorney fees, without engaging in a choice-of-

shall be the party who recovered a greater relief in the action on the contract." (Civ. Code, § 1717, subd. (b).) This extends not just to plaintiffs who recover damages on a contract, but also to a defendant prevailing on a contract claim " ' " 'whenever that party would have been liable under the contract for attorney fees had the other party prevailed.' " ' " (*Westwood Homes, Inc. v. AGCPII Villa Salerno Member, LLC* (2021) 65 Cal.App.5th 922, 927; accord, *Reynolds Metals Co. v. Alperson* (1979) 25 Cal.3d 124, 128.) A court "may also determine that there is no party prevailing on the contract for purposes of this section." (Civ. Code, § 1717, subd. (b).) " '[A] determination of the legal basis for an attorney fee award is a question of law to be reviewed de novo.' " (*Mountain Air Enterprises, LLC v. Sundowner Towers, LLC* (2017) 3 Cal.5th 744, 751.)

Only the parties' respective claims arising under the letter of intent may properly give rise to an attorney fee award here because, unlike the letter of intent, the Sizmek Partner

---

law analysis. Likewise, in the trial court, the parties' dueling motions and the court's decision on attorney fees assumed California law, not Delaware law, applied. " ' "[G]enerally speaking the forum will apply its own rule of decision unless a party litigant timely invokes the law of a foreign state." ' " (*Washington Mutual Bank v. Superior Court* (2001) 24 Cal.4th 906, 919; accord, *Chen v. Los Angeles Truck Centers, LLC* (2019) 42 Cal.App.5th 488, 495.) "[T]he court should conduct a choice-of-law analysis as to each particular issue presented for decision," and "the issue of entitlement to attorney fees under a choice-of-law analysis is thus addressed separately from analysis of substantive issues of the case." (*Aronson v. Advanced Cell Technology* (2011) 196 Cal.App.4th 1043, 1050.) Because neither party invokes Delaware law on the issue of attorney fees, we apply California law.

31

Agreement does not have an attorney fees clause that covers Zeta's successful breach of contract claim under that agreement. (See *Brittalia Ventures v. Stuke Nursery Co., Inc.* (2007) 153 Cal.App.4th 17, 20 ["a prevailing party cannot obtain attorney fees under Civil Code section 1717 if the contract it championed did not contain an attorney fee provision"].) As discussed, the court erred in ruling AudienceX breached the letter of intent by failing to pay the Sizmek Receivable. That erroneous finding of breach was the court's only determination of a breach of the letter of intent by AudienceX. We thus remand for the trial court to determine which party, if any, is the prevailing party entitled to attorney fees. (See *Hsu v. Abbara* (1995) 9 Cal.4th 863, 871 [section 1717 "vests the trial court with discretion in making the prevailing party determination"].)

## DISPOSITION

We reverse the judgment and remand with the following directions:

On Zeta's complaint, judgment shall be entered in favor of AudienceX on the first cause of action (for breach of the letter of intent); judgment shall be entered in favor of Zeta on the second cause of action (for breach of the Sizmek Partner Agreement).

On the first cause of action in AudienceX's cross-complaint, judgment shall be entered in favor of AudienceX on its claim of breach of the obligation to provide Zeta stock, with damages in the amount of $2.25 million; judgment shall be entered in favor of Zeta on AudienceX's claim of breach of the obligation to use best efforts. The court shall calculate prejudgment interest (commencing June 9, 2021) on the damages owed to AudienceX in the amount of $2.25 million.

The court's ruling on attorney fees is vacated, and the court shall determine which party, if any, is a prevailing party, and calculate any attorney fees.

AudienceX is entitled to recover its costs on appeal.

STONE, J.

We concur:

SEGAL, Acting P. J.

FEUER, J.